PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2994
_____

MARK A. ROBINSON,

Appellant

v.

SUPERINTENDENT ROCKVIEW SCI; BRIAN
THOMPSON; ROBERT MARSH, Deputy Superintendent;
MELINDA SMITH, CCPM; JEFFREY RACKOVAN,
Superintendent Assistant; LIEUTENANT FINK;
LIEUTENANT SUTTON; LIEUTENANT KENSINGER;
SERGEANT HOOVER; OFFICER LIEDHECKER;
OFFICER NWANTA; JOHN DOE, Officer;
OFFICER HURLEY; SERGEANT BRYANT; GRANLUND,
Unit Manager; HARPSTER, Unit Manager; CAPTAIN
EATON; OFFICER TAYLOR; OFFICER ANGELO;
OFFICER FLECK; WILLIAM WILLIAMS, CHCA;
DOCTOR GROSS; BURKE, Doctor; NAPHIA, Doctor;
PARSON, Doctor; PA PENGIERO; BIANNA, Nurse;
DORINA VARNER, Chief Hearing Examiner;
THE CENTRAL OFFICE INMATE DISABILITY
ACCOMODATION COMMITTEE; OTHER
INDIVIDUALS & POSITIONS TO BE NAMED AT A
LATER DATE AS IDENTIFIED; DAVID KUHN, Hearing

Examiner SCI Rockview; LIEUTENANT KERNS;
OFFICER STAL; OFFICER HAHN; OFFICER PORTER

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-10-cv-00272)
District Judge: Honorable Robert D. Mariani

_____

Argued: January 20, 2016
Before: JORDAN, HARDIMAN, and GREENAWAY, JR.,
*Circuit Judges.*

(Filed: July 27, 2016)

John L. Jacobus (Argued)
Linda C. Bailey
Timothy Work
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
        *Attorneys for Appellant*

Kathleen G. Kane
Howard G. Hopkirk (Argued)
John G. Knorr, III
J. Bart DeLone
Office of Attorney General of Pennsylvania
Strawberry Square, 14th Floor
Harrisburg, PA 17120
        *Attorneys for Appellee*

————————

OPINION OF THE COURT

————————

HARDIMAN, *Circuit Judge*.

Mark Robinson, an inmate in the custody of Pennsylvania's Department of Corrections (DOC) at the State Correctional Institution at Rockview (SCI Rockview), appeals the District Court's summary judgment in favor of Lieutenant Charles Fink on his excessive force claim. The District Court held that Robinson failed to exhaust administrative remedies prior to filing suit as required by the Prison Litigation Reform Act (PLRA). Because we agree with Robinson that his attempts to avail himself of SCI Rockview's administrative processes and the prison's noncompliance with its own deadline satisfied the PLRA, we will vacate and remand.[1]

I

On October 9, 2009, Lieutenant Fink escorted Robinson from the prison showers to his cell. Upon removing his handcuffs, Fink allegedly twisted Robinson's left arm "real hard" and said, "since today is my last day, I wanted to leave you with a present." App. 312. Robinson felt pain in his arm and shoulder and submitted a sick call request the next day. Robinson was prescribed medication but continued to experience pain in the months that followed.

———————————

[1] We thank John Jacobus, Linda Bailey, and Timothy Work of Steptoe & Johnson for their pro bono representation of Robinson in this appeal.

3

At the time of Robinson's injury, the DOC had two policies in place governing the reporting of abuse by inmates: the Inmate Abuse Allegation Monitoring Policy (Abuse Policy) and the Inmate Grievance System Policy (Grievance Policy). Under the Abuse Policy, an inmate could raise a dispute in one of three ways:

(1) "report it verbally or in writing to any staff member"

(2) "file a grievance in accordance with [the Grievance Policy]" or

(3) "report it in writing to the Department's Office of Professional Responsibility (OPR)."

App. 391. In other words, Robinson could have brought his complaint to the attention of prison authorities either by reporting it to a staff member or the OPR (and remain under the strictures of the Abuse Policy), or by filing a grievance in accordance with the Grievance Policy. As we shall explain, Robinson pursued both administrative channels.

A

At the time Robinson filed his claims, the DOC's Abuse Policy provided that once an inmate reported abuse, all subsequent procedures were to be conducted at the initiative of the prison administration. The Abuse Policy also stated that when a complaint of abuse is received, a prison staff member "shall complete" Form DC-121 (Report of Extraordinary Occurrence – Part 3, Employee Report of Incident). App. 394. That form then must be distributed to a supervisor and the facility's Security Office. Once the form is

4

received by the Security Office, the incident "shall be investigated and an investigative report shall be compiled" for submission to OPR. App. 395. OPR is tasked with reviewing the Security Office's findings for integrity and thoroughness, and remanding the matter to the Facility Manager if further investigation is required. If the matter is remanded, the Facility Manager has 30 days to conduct a follow-up investigation, address OPR's concerns, and resubmit the report. Once OPR accepts the matter, it has 30 working days to complete its own review and respond to the inmate in writing.

The record shows that Robinson filed two written reports to staff members detailing his excessive force claim against Fink in accordance with the Abuse Policy. On October 9, he submitted Form DC-135A (Inmate's Request to Staff Member) in which he described the incident, indicated that his shoulder was injured, and asked the Unit Manager to investigate the matter. On October 10, he filed a Sick Call Request in which he again described the incident and requested medical attention. Other than confirming that Robinson received a medical assessment and medication, the record fails to show that anyone at SCI Rockview timely followed up on Robinson's written reports or responded to either complaint of abuse.

B

The DOC's Grievance Policy was more formal than its Abuse Policy and provided the following process. To initiate a claim, an inmate must file Form DC-804, Part 1 with the Facility Grievance Coordinator within 15 working days of an incident. The inmate must sign and date the form and include

a short description of the incident and other basic information.

The Facility Grievance Coordinator "shall assign a tracking number" and, if the form is compliant, must "designate[] a staff member to serve as the Grievance Officer" for its resolution. App. 402–03. "When the Grievance Officer submits the grievance for formal resolution, he/she shall provide a written response to the inmate within 10 working days of receipt of the grievance." App. 403 (emphasis removed). If the investigation requires more time, the Facility Manager may authorize a 10-day extension, in which case "the inmate shall be advised in writing." App. 404.

If the grievance is denied, the inmate may appeal to the Facility Manager within 10 working days of the date he received his written response. The inmate cannot appeal prior to receiving a response, however. If the appeal is denied, the inmate may appeal a second time to the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 working days. SOIGA must then respond with a final resolution.

The record shows that Robinson filed Form DC-804, Part 1 on October 21 (12 days after his alleged injury). Robinson described the incident, noted that he was injured by Fink, requested relief, and mentioned that he had submitted an earlier report pursuant to the Abuse Policy. He also signed and dated the form.

Facility Grievance Coordinator Jeffrey Rackovan received the form, signed it on October 27, assigned it Grievance Number 294032, and made two notations: "Capt. Eaton 11/3" and "Due 11/10." App. 312. Consistent with the

Grievance Policy, these notations indicate that Captain Lynne Eaton was to serve as Robinson's Grievance Officer and that she had to respond by November 10.

November 10 came and went and Robinson received no response. After hearing nothing from Eaton during November or December, on January 8, 2010, Robinson submitted Form DC-135A to Rackovan, informing him that: he had not received a response; he knew it "was due November 10, 2009;" and he was "in need of a response for administrative exhaustion." App. 98.

After 10 more days passed without word from the prison, Robinson submitted another DC-135A to Rackovan, stating that he took SCI Rockview's failure to respond "as a sign that [the prison was] refusing to process" his grievance and that he would "proceed to the next level of appeal." App. 88.

A week later, in a final attempt to spur a response from the prison, Robinson submitted another Form DC-135A—this time to Eaton. Therein Robinson referenced his grievances, noted that Eaton had missed the November 10 deadline, and stated "[i]f I do not receive a response to each Grievance or this request slip by you, by the date of February 1, 2010, I will consider that a denial of the two Grievances. And I shall proceed from there." App. 86. Robinson received no response by February 1.

II

On February 5, 2010, Robinson filed a complaint in the United States District Court for the Middle District of Pennsylvania asserting several claims against approximately

30 prison officials, including his excessive force claim against Fink.

A

On March 17, 2010—more than four months after Eaton's November 10 deadline and roughly six weeks after Robinson filed suit—SCI Rockview responded to Robinson's grievance against Fink.[2] In that response, Eaton denied Robinson's claim, but her findings referenced a different incident from the arm-twisting episode of which he had complained.[3]

That same day, Robinson submitted another Form DC-135A, this time appealing Eaton's denial to the Facility Manager. He noted that: her response was submitted "far beyond" her November 10 deadline; he was "never interviewed or examined" by Eaton during the course of her investigation; and "her response reference[d] a totally different matter," indicating a lack of "due diligence." App. 314. On March 24, Robinson's appeal was denied by SCI Rockview's Superintendent.

---

[2] In their briefing, counsel for Appellee does not provide any explanation or justification for the protracted delay in responding to Robinson's grievance and complaints of abuse.

[3] The response discussed an incident in which Robinson "attempt[ed] to commit suicide" and was "removed from [his] cell" and "placed in the processing area . . . to be assessed by medical." App. 313. It concluded that "Lt. Fink denies using any excessive force and there is no evidence to indicate otherwise." *Id.*

8

Robinson timely appealed to SOIGA. SOIGA remanded the matter and Rackovan provided a revised response. Rackovan again denied Robinson's claim, however, citing Fink's denial of the allegations and the fact that Robinson's medical report indicated no visible injury and that pain medication was provided to him.

Robinson appealed again to SOIGA, which issued a Final Appeal Decision on July 26 upholding the denial of his grievance.

B

On January 16, 2014, the District Court adopted the Magistrate Judge's Report and Recommendation dismissing almost all of Robinson's claims. However, the Court overruled the Magistrate Judge's dismissal of his excessive force claim against Fink, finding that "neither Defendants nor [the Magistrate Judge] addressed it." App. 23. The Court remanded the matter for further consideration, asking the parties to brief the issue of "whether [Robinson] exhausted his administrative remedies" with regard to his claim against Fink. App. 24.

The Magistrate Judge issued a second Report and Recommendation on May 6, 2014. He concluded that Robinson had not exhausted his administrative remedies prior to filing suit with respect to his excessive force claim since "Robinson elected to bring [his suit] before receiving a final decision on his grievance." App. 7. The Magistrate Judge reasoned:

> Regarding Grievance No. 294032, Robinson received responses to this grievance, and was in

9

the process of pursuing appeals of unfavorable rulings during and after the time he initiated this lawsuit. Although there may have been some delays at the institutional level in the processing of Robinson's grievances, we do not find that the grievance process was essentially rendered unavailable to Robinson and, therefore, disagree with Robinson's assertion that he should be excused from the PLRA's exhaustion requirements with respect to his claims against Lieutenant Fink.

App. 20–21. The District Court adopted the Magistrate Judge's second report and Robinson filed this timely appeal.

## III

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the District Court's determination that Robinson failed to exhaust administrative remedies. *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). In doing so, we accept the Court's factual findings unless clearly erroneous, *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013), and are mindful that failure to exhaust is an affirmative defense that Fink must plead and prove, *Jones v. Bock*, 549 U.S. 199, 212 (2007).

## IV

The question presented is whether the District Court erred in concluding that Robinson failed to exhaust his administrative remedies under the PLRA prior to filing suit. The answer to this question depends on whether SCI

Rockview's repeated failure to respond to Robinson's grievance—even after its own deadline had passed and multiple follow-up requests were made—rendered the prison's administrative remedies "unavailable" to Robinson under the PLRA.

The PLRA requires inmates to exhaust prison grievance procedures before suing in court. 42 U.S.C. § 1997e(a). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

In *Brown v. Croak*, we noted that the PLRA requires exhaustion of "available" administrative remedies and defined such remedies as those that are "capable of use; at hand." 312 F.3d 109, 113 (3d Cir. 2002) (internal quotation marks omitted) (quoting *Webster's II, New Riverside University Dictionary* 141 (1994 ed.)). Accordingly, we held that when prison officials "thwart[] [a prisoner's] efforts to exhaust his administrative remedies," they render them "unavailable." *Id.* The Supreme Court recently confirmed our view. *Ross v. Blake*, 2016 WL 3128839, at *7 (U.S. June 6, 2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'") (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

In this case, the District Court adopted the Magistrate Judge's conclusion that Robinson's efforts to obtain remedies were not thwarted because "[he] received responses to [his] grievance, and was in the process of pursuing appeals of

11

unfavorable rulings during and after the time he initiated [his] lawsuit." App. 20. The Court also agreed that any "delays at the institutional level" were not substantial enough to render Robinson's administrative remedies "unavailable." *Id.*

Five of our sister courts have held that a prison's failure to timely respond to an inmate's properly filed grievance renders its remedies "unavailable" under the PLRA. *See, e.g.*, *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) ("Following the lead of the [10th, 7th, 8th, and 5th] circuits . . . we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance."). For example, in *Powe v. Ennis*, the Fifth Circuit vacated the District Court's dismissal of a prisoner's claim based on failure to exhaust when the prison did not provide a timely response to his grievance. 177 F.3d 393 (5th Cir. 1999) (per curiam). The Court succinctly held: "A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired." *Id.* at 394. The same reasoning drove the result in *Foulk v. Charrier*, in which the Eighth Circuit held that an inmate was not required to file a grievance in order to exhaust administrative remedies when the prison failed to respond to an informal review request that was a prerequisite to his ability to file a grievance. 262 F.3d 687, 698 (8th Cir. 2001).

Our most relevant opinion is in line with these precedents. In *Small v. Camden County*, an inmate submitted two grievances "in compliance with [the prison's] procedures," but "no decision" was rendered on either of them and prison rules required inmates to wait for a decision before filing an appeal. 728 F.3d at 273. We reasoned that "[b]ecause [the prison's] procedures did not contemplate an

12

appeal from a non-decision, when [the inmate] failed to receive even a response to the grievances . . . much less a decision as to those grievances, the appeals process was unavailable to him." *Id.*

Consistent with *Small* and the unanimous view of the Courts of Appeals that have spoken on the matter, we agree with Robinson that SCI Rockview rendered its administrative remedies unavailable to him when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim.

The record reveals that Robinson pursued his claim correctly at every step. He filed his claim under the Grievance Policy on the proper form; he included a brief, legible, and appropriate description of the incident; he signed and dated the form; and he submitted it to the proper prison staff member within 15 working days of his injury. Despite this, SCI Rockview failed to respond by its self-imposed deadline. Even worse, the prison refused to update Robinson on the status of his grievance after receiving three requests in January asking for a response and threatening suit as a last resort. As in *Small*, filing suit was Robinson's only method to advance his claim since SCI Rockview prohibited inmates from filing appeals prior to receiving a decision. App. 404 ("The Initial Review decision from the Grievance Officer must be received by the inmate before any appeal to the Facility Manager can be sought.").

The District Court concluded that SCI Rockview's March 17, 2010, response to Robinson—which was provided more than four months late and six weeks after Robinson filed suit, and did not even address the correct incident—

13

rendered the prison's administrative remedies "available" to him under the PLRA. We disagree. Robinson's decision to accept that response in good faith and pursue his claim through the remainder of a belated administrative process does not rectify the prison's errors. *Cf. Goebert v. Lee Cty.*, 510 F.3d 1312, 1323 (11th Cir. 2007) ("If we allowed jails and prisons to play hide-and-seek with administrative remedies, they could keep all remedies under wraps until after a lawsuit is filed and then uncover them and proclaim that the remedies were available all along.").[4]

Although SCI Rockview did not play hide-and-seek with its administrative processes, it did violate those processes by failing to respond to Robinson's grievance until more than four months after its own deadline and then repeatedly ignoring his requests for a decision. "Operating at its best, which it admittedly sometimes does not, a prison administrative grievance procedure will afford an inmate with a sense of respect. If prison officials treat his claims with

---

[4] It is worth noting that had Robinson missed his own procedural deadline—for example, by failing to file his grievance until 16 days after the alleged incident with Fink—he might have found himself barred from seeking a judicial remedy since it could be argued that he failed to exhaust the prison's administrative procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . ."). Therefore, it would have been risky for Robinson to ignore the prison's late-filed response and proceed solely in federal court. Rather than take that risk, he sensibly decided to pursue his grievance when SCI Rockview finally responded to it. We reject the prison's invitation to hold Robinson's diligence against him.

seriousness and care, they may well discover that he can be easily satisfied." *Nyhuis v. Reno*, 204 F.3d 65, 76 (3d Cir. 2000). But the converse is also true. If prisons ignore grievances or fail to fully investigate allegations of abuse, prisoners will feel disrespected and come to believe that internal grievance procedures are ineffective. If prisoners do not believe they will get a response from prison administration, they will be more likely either to bypass internal procedures entirely and file a complaint in federal court or use a federal lawsuit to prod prison officials into a response, thus taxing the judicial resources that Congress meant to conserve by passing the PLRA. Accordingly, we hope that the events that transpired in this case are not reflective of the way in which SCI Rockview responds to inmate grievances generally.

On these facts, we hold that SCI Rockview rendered its administrative remedies "unavailable" to Robinson under the PLRA. Consequently, the District Court erred when it held that Robinson failed to exhaust his administrative remedies.

V

For the reasons stated, we will vacate the District Court's summary judgment in favor of Fink on Robinson's excessive force claim and remand for further proceedings consistent with this opinion.

15