NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3839
_____

DESMOND MARTIN,
                            Appellant

v.

GEARHART, Correction Officer; KNIGHT, Correctional Officer Sergeant;
C.A.S. RICHARD DAVIS; C.O. SHERMAN
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 12-cv-02410)
District Judge:  Honorable John E. Jones, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 2, 2017
Before:  AMBRO, KRAUSE and NYGAARD, Circuit Judges

(Opinion filed: October 13, 2017)
_____

OPINION[*]
_____

PER CURIAM

    Pro se appellant Desmond Martin, a Pennsylvania state prisoner at SCI-Rockview,

appeals the District Court's summary judgment dismissal of his civil rights complaint

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

filed pursuant to 42 U.S.C. § 1983. We will affirm in part, vacate in part, and remand for further proceedings.

In 2012, Martin filed a civil rights action against four employees of the Pennsylvania Department of Corrections (DOC) for violations of his constitutional rights under the First, Eighth, and Fourteenth Amendments. Specifically, he alleged that: Defendant Davis used excessive force against him, and then retaliated against him by filing a misconduct report; Defendants Gearhart and Knight (1) "seized" his property without due process and in retaliation for Martin's use of the Inmate-Abuse Hotline to report Davis; and (2) denied him access to the courts by disposing of "legal work" which prevented Martin from filing a timely response in his Post-Conviction Relief Act (PCRA) proceedings; and that Defendant Sherman retaliated against Martin by ignoring his complaints that water had been turned off in his prison cell, resulting in "cruel and unusual punishment." Martin sued the Defendants in both their individual and official capacities, and sought declaratory relief and damages.

The claims arose from an incident after Martin's team lost an inmate intramural basketball game. Davis intervened in an argument between some of the inmates and the inmate referees, telling them it was "just a game." The parties dispute what happened next. Martin claims he responded then, "[I]f it was just a game, you know, why did they cheat us?" He claims that Davis cursed at him to get out of the gym, and when he refused to leave until Davis gave him a hall pass, Davis assaulted him. Defendants maintain that Martin became verbally abusive and refused to obey repeated orders to leave the gym and to turn over his inmate I.D. As a result of the incident, Davis filed a misconduct report

against Martin, and Martin reported abuse allegations to prison officials and the Inmate-Abuse Hotline. Martin was found guilty of misconduct, specifically of using abusive language and failing to obey an order; he was placed in the Restricted Housing Unit (RHU) for 90 days.

The District Court dismissed the due process claim against Gearhart and Knight, and dismissed the retaliation claim against Knight. It granted summary judgment for the remaining defendants after determining that Martin had failed to exhaust his administrative remedies, or, in the alternative, that he had failed to produce sufficient evidence to demonstrate that there was a genuine issue of material fact. This appeal ensued.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment, see Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995), and over the dismissal of a complaint for failure to exhaust administrative remedies, see Jenkins v. Morton, 148 F.3d 257, 259 (3d Cir. 1998).[1] Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact

---

[1] Although this opinion addresses the grant of summary judgment, we will affirm the orders granting the motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for substantially the same reasons articulated by the District Court in its Memorandum Orders. We note that the Court dismissed Knight from the action after determining that there were no more pending claims against him. However, the complaint included allegations against Knight for the denial of access to the courts, which the District Court had determined were sufficient to state a claim for relief. Nevertheless, as the discussion above makes clear, that claim is procedurally defaulted; accordingly, dismissing Knight from the action was harmless error.

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Kaucher v. Cty. of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006).

Excessive Force Claim

In response to Martin's excessive force claim, Davis raised the affirmative defense of failure to exhaust. See Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) ("Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant.").[2] The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust all administrative remedies available within a prison's grievance system prior to filing a § 1983 action concerning prison conditions.[3] See 42 U.S.C. § 1997e(a); see also Porter v. Nussle, 534 U.S. 516, 532 (2002) (holding that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). The PLRA's exhaustion requirement is mandatory. Woodford v. Ngo, 548 U.S. 81, 85 (2006).

Martin filed a grievance regarding his excessive force claim; it was denied, and the decision was upheld on appeal. Martin admits in his complaint that his subsequent appeal to SOIGA was untimely. See id. at 83-84 (exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective" appeal). The

---

[2] In support, Defendants provided a declaration from Jeffrey A. Rackovan, the Facility Grievance Coordinator at SCI-Rockview, setting forth Martin's grievance history at the prison, including appeals.

[3] The Pennsylvania DOC requires three stages of review to exhaust administrative remedies, including an initial written grievance submitted to the Facility Grievance Coordinator, an appeal to the Facility Manager, and a final written appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). See DC-ADM 804.

District Court properly discounted his argument that the process was rendered unavailable by the delay in the prison's response to the initial grievance. See Brown, 312 F.3d at 111 (PLRA requires exhaustion of all "available" remedies); see also Robinson v. Superintendent, 831 F.3d 148, 153-54 (3d Cir. 2016) (the exhaustion requirement satisfied where prison officials fail to timely respond to an inmate's properly filed grievance). As the District Court noted, about a month after the grievance was filed, prison officials notified Martin that the response time was extended pending further investigation of the incident. Later, after Martin filed a grievance complaining of the delayed response time, prisons officials promptly responded that the matter was still under investigation. Once the grievance regarding the excessive force claim was denied, prison officials timely responded to his appeal. Under these circumstances, the administrative remedies were not rendered unavailable. Compare id. at 154 (observing that "filing suit was [plaintiff's] only method to advance his claims" where prison officials failed to timely respond to grievance and "repeatedly ignored his follow-up requests for a decision on his claim").

Martin also maintained that the remedies should be deemed unavailable because he was misled by the Superintendent's decision upholding the Initial Review Response (IRR), which stated that "[t]his matter has been investigated and reviewed in accordance with applicable DOC policy DC ADM 001. The Office of Special Investigations and Intelligence has determined your allegations were not supported by any evidence. No further action is necessary. Your appeal is denied." Martin asserts that the statement that "no further action is necessary" misled him to believe that he need not file an appeal.

5

The Supreme Court has recognized that an inmate has no obligation to exhaust where prison administrators "thwart" his efforts to do so through misrepresentation. Ross v. Blake, 136 S. Ct. 1850, 1860 (2016). We agree with the District Court that Martin was not "thwarted" here, and that the Superintendent's statement, by itself, was insufficient to excuse exhaustion. As the Defendants note, this statement appears to be in response to Martin's contention in his appeal that further investigation was necessary. Moreover, it is clear from the summary judgment record that, at the time of the Superintendent's decision, Martin was aware that DC-ADM 804 required an appeal to SOIGA because he had filed an appeal from another grievance. See Grievance #418651. To the extent that the Superintendent's decision conflicted with that established policy, Martin should have "err[ed] on the side of exhaustion." Ross, 136 S. Ct. at 1859.[4] Accordingly, we find that the District Court properly granted summary judgment on this claim.

### Denial of Access to the Courts/Retaliation Claims Arising out of Loss of Property

Defendant Sherman conducted an inventory to determine that Martin's property had been transferred to RHU. Martin signed a DC-153 form, indicating that all of his property was present and accounted for, except for a pair of Nike sneakers. In his complaint, Martin alleges that there was additional property missing, including a washtub

---

[4] We find no merit to Martin's alternative argument that he exhausted his remedies by appealing his misconduct charge to final review. Even assuming that Martin could have exhausted this claim through DC-ADM-801, he failed to do so here. The Disciplinary Hearing Report indicates that Martin merely stated that "there is an investigation on Mr. Davis for assaulting me," but his appeals centered on procedural aspects of the misconduct hearing process, rather than on the facts underlying his excessive force claim.

6

and "legal work," which he claims he listed on the back of the DC-153 form. He maintains that his cellmate gave the missing property to Defendant Gearhart, who then stated that "he'll never see this stuff again" and "he's a snitch." Martin asserts that Gearhart took the property to the property room and "seized it" in retaliation for Martin's abuse complaint against Davis. He further avers that, as a result of the loss of his legal work, his PCRA petition was dismissed, denying him access to the courts.

We agree with the District Court that Defendants met their burden to prove that Martin did not exhaust his administrative remedies with respect to these claims. On July 3, 2012, Martin filed grievance #418651 alleging that his property was missing, including his sneakers, a washtub, and various other items.[5] Notably, he did not list his "legal work," nor did he allege that the property was taken in retaliation for his having filed an abuse complaint. The grievance was upheld in part as to the sneakers, but denied as to the remaining items because they were not listed on the DC-153 form. In an appeal filed on July 19, 2012, Martin stated that Gearhart could verify that he had retrieved the items from his cell and brought them to the property room. Again, there was no reference to an intentional deprivation by Gearhart; rather, Martin stated, "I just want what belongs to me." Further, although he again listed the missing items, the list did not include "legal work."

In response, the Facility Manager indicated that he had spoken to Gearhart, who stated that he had retrieved "one pair of sneakers, one wash tub, and some legal

---

[5] Martin listed the other missing items as "1 tank top, 1 thermal top, T-shirt, 1 ½ pair of ankle socks (I have 1 sock), 2 mirrors, razor, 1 commissary towel."

7

paperwork" from the cell and brought it to the property room. The Facility Manager concluded that Martin would not be reimbursed for the sneakers because there was no record that Martin legitimately possessed them, but that he would be reimbursed for the washtub. There would be no reimbursement for the legal material because there was no way to determine the content or the amount. On appeal to final review, Martin stated that his PCRA was dismissed because his "rebuttal was in [his] legal work a yellow manilla (sic) envelope full about 40 pieces of paper missing." He sought $500.00 for the legal work. The SOIGA denied the appeal, noting that Martin did not mention missing legal work until his appeal to final review, nor could reimbursement be properly determined.

Martin's failure to raise his retaliation claim at any level, and his denial of access to the courts claim at the first two levels, precludes relief for these claims in federal court. See Woodford v. Ngo, 548 U.S. 81, 85, 93 (2006) (holding PLRA requires "proper" exhaustion, which requires prisoner to bring complaint to every level of the state's prison grievance system). With respect to the retaliation claim, he provides no evidence to support his contention that he filed a separate grievance to which the administration failed to respond. There is also insufficient support for his claim that he "resubmitted [his] initial grievance" to include reference to the missing legal work. The document to which Martin refers was construed as the appeal from the IRR; it was filed on July 19, 2012, nine days after the IRR was filed, and it refers to that decision. Although Martin maintains that he filed his appeal from the IRR on August 1, 2012, and referenced the

8

resubmitted grievance, there is simply no evidence to support this claim.[6]  Furthermore, as noted *supra*, Martin did not list his "legal work' among the missing documents in the appeal from the IRR.  Although there is a notation in the bottom side margin that reads: "sneakers (indecipherable) and washtub[,] legal work," this was insufficient to put the state on notice that the legal work was missing and that Martin was injured by its loss.  Indeed, Martin admits that his PCRA was not dismissed "until right before final review."  At that point, Martin should have filed a grievance with respect to his access-to-the-courts claim, rather than presenting it, for the first time, in his appeal to final review.  The District Court, therefore, did not err in determining that these claims were defaulted and that summary judgment was warranted.

### Conditions of Confinement/Retaliation Claim

In his complaint, Martin alleges that, while he was in RHU, the water to his cell was turned off for 27 ½ hours resulting in inhumane conditions of confinement.  In particular, Martin maintains that the smell of feces and urine from the toilet caused "vomitting (sic) and massive headaches," and led him to contract scabies.  He further asserts that he informed Defendant Sherman about the water stoppage, but that he failed to address the problem in retaliation for Martin's complaints of abuse against Davis.[7]

---

[6] We note that such an appeal would have been untimely as to the initial grievance.  See DC-ADM 804 § 2(A)(1)(a) (appeals from IRR must be filed within 15 working days).
[7] Martin disputes the Defendants' contention that the water was turned off due to a plumbing issue, and that it was manually turned on to intermittently allow Martin and his cellmate to wash their hands and flush the toilet.  Because the facts surrounding the incident are disputed, we view them in the light most favorable to Martin in analyzing the claim.

Defendants argued that these claims were procedurally defaulted. Martin filed Grievance #416153, in which he complained that his water was turned off, and that it was in retaliation for his complaints against Davis. The grievance was denied, and the response was upheld on appeal. The parties dispute whether Martin appealed the grievance to SOIGA. Martin produced a copy of an appeal to SOIGA, which he maintains went unanswered; Defendants failed to address the validity of this appeal. On this record, the District Court properly determined that Martin exhausted his remedies relative to these claims. See Robinson, 831 F.3d at 153-54.

The District Court concluded that Defendant Sherman was entitled to judgment as a matter of law with respect to the Eighth Amendment claim. We agree. The Constitution does not mandate comfortable prisons, but the conditions of confinement must be "humane." See Farmer v. Brennan, 511 U.S. 825, 832 (1994). To establish a violation of his Eighth Amendment rights, Martin had to show (1) a deprivation that is "objectively, sufficiently serious" that he was denied "the minimal civilized measure of life's necessities," and (2) a "sufficiently culpable state of mind" on the part of Sherman, such as deliberate indifference to Martin's health or safety. Id. at 834.

The District Court also determined that Martin could not establish the objective element of his claim because the deprivation of running water for just over a day was insufficiently serious to establish an Eighth Amendment violation. In determining whether the conditions of confinement amount to a constitutional violation, the "'circumstances, nature, and duration' of the conditions must be carefully considered" but the "length of exposure . . . is often of prime importance." DeSpain v. Uphoff, 264

10

F.3d 965, 974 (10th Cir. 2001) (citation omitted); see Hutto v. Finney, 437 U.S. 678, 686–87 (1978) ("A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months."); see also Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994) ("the length of time required before a constitutional violation is made out decreases as the level of filthiness endured increases").

The conditions of confinement here are indeed troubling, but they were of limited severity and duration. While there is no doubt that "exposure to human waste carries particular weight in the conditions calculus," DeSpain, 264 F.3d at 974, Martin admits that he showered the morning of June 11, 2012, before the water was turned off and he does not allege that the toilet overflowed, or that he had physical contact with urine or feces. Martin also allegedly suffered health consequences from the conditions, including headaches and vomiting.[8] In addition, Martin averred that he was deprived of potable water during the one-day shut-off. Cf. Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 228 (3d Cir. 2015) (Observing that the denial of potable water for two days may be sufficient to constitute a constitutional deprivation).

Even assuming Martin can satisfy the objective component of the Eighth Amendment analysis, however, he has not alleged facts sufficient to establish the subjective component. Martin could establish deliberate indifference by showing that Sherman failed to act despite knowing that his inaction would subject Martin to a substantial risk of serious harm. Chavarriaga, 806 F.3d at 227. The summary judgment

---

[8] Martin neither alleges facts nor produces evidence from which it plausibly could be determined that he contracted scabies as a result of the brief period in which the water was turned off.

record includes sworn declarations from Martin and his cellmate in RHU, Aaron Pitchford, alleging that Martin informed Sherman that the water had been turned off; but that was only two hours after the shut-off. There is no indication that Sherman was made aware, at any later point, about the cell conditions, including the build-up of waste or the vomiting. Accordingly, summary judgment on this claim was proper.

Finally, we turn to Martin's retaliation claim against Sherman. Prison officials may be held liable for retaliatory conduct that was motivated "'in substantial part by a desire to punish [the prisoner] for exercise of a constitutional right,'" Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (citation omitted), such as filing lawsuits and grievances related to the conditions of incarceration. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). To succeed on his retaliation claim, Martin had to demonstrate that he was engaged in constitutionally protected conduct, that the prison officials caused him to suffer "adverse action," and that there is a causal connection between the exercise of his constitutional rights and the adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Martin alleged that the water to his cell was turned off because he reported the alleged abuse by Davis to the Inmate-Abuse Hotline.

In rejecting Martin's retaliation claim, the District Court concluded that Martin failed to present any evidence creating a genuine issue of material fact as to whether Sherman was personally involved in shutting off the water to the cell. However, Martin need only show knowledge of and acquiescence in the retaliatory act to demonstrate involvement. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Martin testified in his deposition that when he informed Sherman that the water to his cell had

12

been shut off, he replied, "Tell Rick Davis to do it," and "You should have kept you[r] mouth closed." Pitchford also attested that Sherman made these statements. Viewing this evidence in the light most favorable to Martin, it is sufficient to create a jury question about whether Sherman participated in a retaliatory act against Martin.

The District Court alternatively concluded that defendants were entitled to judgment on this claim because the alleged "adverse action" did not deter Martin from exercising his constitutional rights, as evidenced by his filing of grievances and this civil rights suit. The test for adverse action, however, is not whether *this* plaintiff would be deterred, but rather whether a prisoner of ordinary firmness would be deterred. Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012). Furthermore, the effect of the adverse action must be more than de minimis. McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006). The alleged adverse action here – cutting off the water supply to Martin's cell for over a day – was neither trivial nor inconsequential. Even assuming conditions in Martin's cell fail to rise to an Eighth Amendment violation, they were more than just uncomfortable, as they caused both Martin and Pitchford to become sick[9]; moreover, without potable water, there was a risk of dehydration from the vomiting. We find this conduct sufficiently injurious to make out a retaliation claim. Martin filed a grievance complaining while the water was still shut off; but it is reasonable to conclude that a similarly situated person of ordinary firmness might not have filed such a grievance out of fear it would cause a delay

---

[9] The record indicates that on the morning of June 12, 2016, the second day of the water shut-off, Martin received a misconduct report for twice refusing to shut the food slot to his cell door. He argued in response to the charge that it was necessary to keep the slot open to get some fresh air because the stench of the feces, urine, and vomit had become unbearable.

13

in having the water turned back on, or out of fear it would get turned off again in the future.  Accordingly, we will vacate the District Court's grant of summary judgment on the merits of the retaliation claim.

For the reasons set forth above, we will affirm the District Court's judgment as to all claims except the retaliation claim against Defendant Sherman, which we will vacate and remand for further proceedings.