**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1007
_____

THOMAS MOORE,
Appellant

v.

MORIROSA LAMAS, Warden at SCI Rockview; KENNY GRANLUND, Unit
Manager; PENNSYLVANIA DEPARTMENT OF CORRECTIONS; PERKS; HALL;
FISHER; LYNN EATON

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 3:12-cv-00223)
District Judge: Honorable Matthew W. Brann

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 18, 2022

Before: GREENAWAY, JR., MATEY and ROTH, *Circuit Judges.*

(Filed: January 24, 2023)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

Thomas Moore appeals the dismissal of his claims against two prison employees. Seeing no error, we will affirm.

## I.

Thomas Moore was incarcerated in the Pennsylvania State Correctional Institution at Rockview ("SCI-Rockview") where, Moore alleges, he was assaulted by employees. After Moore reported the abuse, he was moved to the restricted housing unit ("RHU") where, Moore states, corrections officials continued their abuse. **[App. 152, 153-54.]** Moore alleges that SCI-Rockview's Superintendent ("Lamas") and another official ("Eaton") covered-up the alleged misconduct. **[App. 153–58.]**

At every turn, Moore filed grievances with the prison. **[App. 153–58.]** His claims against two staff members, Lamas and Eaton, were rejected each time and Moore did not appeal those decisions through the prison's grievance process. **[App. 434]**

Dissatisfied with the prison's response, Moore filed a complaint against several prison employees, including Lamas and Eaton. **[App. 128, 150.]** Because Moore did not appeal the denial of his prison grievances, the District Court dismissed his claims against Lamas and Eaton[1] for failure to exhaust administrative remedies. **[App. 48–49.]** Moore now appeals that decision.[2]

---

[1] Other claims against different defendants proceeded to trial where a jury returned a verdict in Defendants' favor.

[2] The District Court had jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343, and we have jurisdiction under 28 U.S.C. § 1291. We review de novo the District Court's determination that Moore failed to exhaust administrative remedies, *Robinson v.*

2

**II.**

**A. Failure to Exhaust**

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion requires an inmate to follow the applicable procedural rules in the prison's grievance process. *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

The "available" qualifier in the PLRA holds real weight: An inmate must exhaust "those, *but only those*, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (emphasis added) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)**)**. An administrative remedy is unavailable, and exhaustion not required, where 1) prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates," 2) the administrative process is so opaque and confusing that "no ordinary prisoner can make sense of what it demands," or 3) prison officials "thwart inmates from taking advantage of a grievance

---

*Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016), and we accept its factual findings unless clearly erroneous, *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013). We review the grant of a motion to dismiss for failure to state a claim de novo, accepting the non-moving party's factual allegations as true and considering those facts in the light most favorable to that party. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

process through machination, misrepresentation, or intimidation." *Id.* at 643-44.

1.      **Availability**

Inmates at SCI-Rockview had two channels for reporting mistreatment of the kind Moore alleges: DC-ADM 804 and DC-ADM 001. DC-ADM 804 provides a general, though rigorous, mechanism for inmate grievances. An inmate's submission of a written grievance is reviewed and results in an Initial Review Response or Rejection explaining the disposition of the inmate's grievance.[3] Upon receipt of either response, an inmate has fifteen days to file an appeal with the Facility Manager. DC-ADM 804, § 2.A. Upon the Facility Manager's resolution of that appeal, the inmate may file for Final Review by the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). DC-ADM 804, § 2.B.

DC-ADM 001 is designed specifically for allegations of abuse and is much more flexible. An inmate may 1) report abuse orally or in writing to any staff member, 2) file a grievance according to DC-ADM 804's strictures, or 3) send a written report to the Office of Special Investigations and Intelligence ("OSII").[4] Once an inmate has reported abuse under DC-ADM 001, an investigation is conducted by the Security Office and the complainant must be notified in writing of the investigation's outcome. DC-ADM 001 § 1.C. If the outcome is not satisfactory, the inmate must then go through the same appeals process described above for DC-ADM 804. DC-ADM 001 § 1.B. Both DC-ADM 001 and

---

[3] DC-ADM 804, *Inmate Grievance System Procedures Manual*, §§ 1.A and 1.B (2010), https://www.law.umich.edu/special/policyclearinghouse/Documents/PA% 20-%20Grievance%20Pol'y.pdf.

[4] DC-ADM 001, *Inmate Abuse Procedures Manual*, § 1 (2022), https://www. cor.pa.gov/About%20Us/Documents/DOC%20Policies/001%20Inmate%20Abuse.pdf.

804 require an inmate who is dissatisfied with the results of an initial investigation to appeal for Final Review by SOIGA before the matter can be brought to an Article III court.

Moore did not appeal the decisions rejecting his grievances. And while SCI-Rockview agrees the appeals processes is "a little confusing," App. 431, "[t]he procedures need not be sufficiently plain as to preclude any reasonable mistake or debate with respect to their meaning." *Ross*, 578 U.S. at 644 (internal quotations omitted). The processes, though far from transparent, are not so opaque that an ordinary prisoner cannot make sense of what is required to make an appeal under DC ADM 001 and 804.

Nor did prison officials "thwart [Moore] from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. While the District Court expressed frustration with some of the prison's actions, it found no evidence that prison staff interfered with Moore's ability to appeal. **[App. 48.]** The District Court's dismissal of these claims for failure to exhaust administrative remedies was therefore proper. [5]

## B.    Failure to Investigate and Spoliation Claims

### 1.  Failure to Investigate

"To prevail on a § 1983 claim, a plaintiff must show that a person (or persons), acting under color of law, deprived him of a constitutional right." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020). Because "Government officials may not be held liable for the

---

[5] Our conclusion is not an endorsement of the prison's grievance process. Many of Moore's filings were met with delay and inaction. And the tedious nature of the grievance system helps turn these matters into federal cases.

unconstitutional conduct of their subordinates under a theory of respondeat superior," *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Tice*, 948 F.3d at 138 (quoting *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2015)).

Even viewing all facts alleged in the light most favorable to Moore, there is no showing that Lamas and Eaton had personal involvement in the failure to investigate Moore's grievances, either through direction or acquiescence. To the contrary, the only relevant personal involvement shown here is Lamas's delivery to Moore, at his request, of forms to initiate a private criminal complaint rather than report his allegations through other means. **[App. 169.]** As a result, the District Court correctly dismissed Moore's failure to investigate claim against Lamas and Eaton.

### 2. Spoliation

"Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). "[A] finding of bad faith is pivotal to a spoliation determination" because "[w]ithholding requires intent." *Id.* at 79.

While Moore has shown—and it was admitted below—that his allegation of abuse was not investigated in a "timely and thorough manner," App. 88, there is no showing that

6

the slow pace was meant to prevent Moore's discovery and use of inculpatory evidence. Further, neither Lamas nor Eaton contributed to this investigation, so any suppressed evidence was never in their control.

In short, Appellant has not shown the control necessary or the type of intentional destruction of evidence that would warrant summary judgment. *See Bull*, 665 F.3d at 73, 79 (requiring bad faith and control). The District Court did not err in dismissing Appellant's claim that Appellees covered up his abuse through spoliation of evidence.

**III.**

For these reasons, we will affirm the order of the District Court.