PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2676
_____

PAUL SHIFFLETT,

Appellant

v.

MR. KORSZNIAK, Correctional Health Administrator,
State Correctional Institution ("SCI") Graterford,
Collegeville, Pennsylvania;
DR. CHRISTIAN, Doctor, Correct Care Solution, et al;
DR. GOLSORKHI, Doctor, Correct Care Solution;
DR. BUKHOLDER, Dentist, Correct Care Solution;
DR. BIANCO, Dentist, Correct Care Solution;
DR. PAMELA ROEHM, Doctor;
DR. JOSEPH P. MULLIGAN, Doctor, Temple Hospital,
Philadelphia Pennsylvania

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-16-cv-06537)
District Judge: Honorable Nitza I. Quinones Alejandro
_____

Argued May 23, 2019

Before: AMBRO, GREENAWAY, JR., and SCIRICA,
Circuit Judges

(Opinion filed: August 12, 2019)

Elana Bildner
Quinnipiac University School of Law
Civil Justice Clinic
275 Mount Carmel Avenue
Hamden CT  06518

Sebastian Brady
Elise M. Wander (Argued)
Yale Law School
127 Wall Street
P.O. Box 209090
New Haven, CT  06520

Benjamin M. Daniels (Supervising Attorney)
Tadhg Dooley
Wiggin & Dana
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT  06508

        Counsel for Appellant

Denise J. Smyler
    General Counsel

Theron Perez
    Chief Counsel
Chase M. Defelice (Argued)
Raymond W. Dorian
    Assistant Counsel
Timothy A. Holmes, I
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA  17050

        Counsel for Appellee
        Joseph Korszniak, Dr. Bianco,
        Dr. Burkholder,

Caitlin J. Goodrich
Kenneth D. Powell, Jr.
Emily B. Ryan-Fiore (Argued)
Weber Gallagher Simpson Stapleton First & Newby
2000 Market Street, Suite 1300
Philadelphia, PA  19103

        Counsel for Appellee
        Dr. Muhammad Golsorkhi

Teresa F. Sachs
Carol A. VanderWoude (Argued)
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA  19103

        Counsel for Appellee
        Dr. Pamela Roehm

3

Sarah M. Baker
Ava M. Plakins (Argued)
Bonner Kiernan Trebach & Crociata
1801 Market Street
Ten Penn Center, Suite 770
Philadelphia, PA 19103

     Counsel for Appellee
     Dr. Joseph P. Mulligan

_____

OPINION OF THE COURT
_____


AMBRO, Circuit Judge

Paul Shifflett was an inmate in the Pennsylvania prison system when he was set upon by fellow inmates who broke his jaw. This was only the beginning of his troubles: the surgery on his jaw went badly, causing him intense pain for the better part of a year. His efforts to seek treatment from the prison medical system bore only the most frustrating of fruit: he alleges he was denied adequate pain medication and given the run-around by different providers, each saying it was someone else's responsibility. Shifflett claims he had still not received fully adequate corrective surgery over eight months later when he filed this complaint in the Eastern District of Pennsylvania, naming seven prison officials and outside doctors as defendants and asserting causes of action under 42 U.S.C. § 1983 for deliberate indifference to severe medical need in violation of the Eighth Amendment and retaliation in violation of the First Amendment.

4

The District Court dismissed all of Shifflett's claims, principally because it found he had not exhausted his administrative remedies within the prison system as required by the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e. The Court also found the substance of Shifflett's allegations insufficient and denied him leave to amend, concluding that amendment could not cure his failure to exhaust.

We disagree. In *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153–55 (3d Cir. 2016), we strongly implied, though we did not hold outright, that a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion. Today we finish what *Robinson* started and adopt this as a rule. Shifflett exhausted his remedies and acquired the right to come into federal court when the prison did not decide the initial appeal of his grievances within the time limits specified by the grievance policy. Thus we reverse the District Court and remand with instructions to appoint counsel under *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993), and to allow Shifflett to file an amended complaint with the assistance of counsel.

## I. Background

The following facts are taken largely from the complaint, as well as certain attached documents. They are lengthy, but necessary.

Shifflett was an inmate at SCI Graterford in Skippack, Pennsylvania when he was attacked by fellow inmates on April 6, 2016. The attack broke his jaw, and the next day he was taken to Temple University Hospital for treatment. On April 8, Dr. Pamela Roehm—an ear, nose, and throat specialist at Temple—operated on Shifflett's jaw, and he was placed on Norco (hydrocodone and acetaminophen) for ten days. Two

5

weeks later he returned to Temple for a follow-up appointment with Dr. Roehm, during which she removed the stitches from the outside of his face and told him that those on the inside of his mouth would dissolve on their own. Shifflett complained of intense pain in his jaw, but Dr. Roehm did not put him on any further pain medication.

On May 4, 2016, Shifflett filed Grievance No. 625021 through the prison grievance system ("Grievance No. 1"). It asserted chiefly that he was not being treated for the pain in his jaw and that his numerous "sick call" request slips had been ignored. It also stated that a contract doctor at SCI Graterford, Dr. Ferdinand Christian, had told him that there was no other option but to deal with the pain, and that Shifflett was receiving his medication only twice a day rather than three times a day as prescribed.

Shifflett filed a second grievance against Dr. Christian, No. 626028, on May 11, 2016 ("Grievance No. 2"). This one alleged that Shifflett had submitted several additional "sick call" request forms since his previous grievance, and that Dr. Christian eventually came to visit him on the 11th but said there was nothing he could do to help. Eventually Dr. Christian agreed to send Shifflett to the hospital for another follow-up appointment, but he left before Shifflett could discuss his other medical concerns, which included his pain medication and his need for allergy medication. The same day, Shifflett submitted a dental request form stating that he continued to be in extreme pain and requesting another examination of his jaw.

The following day, Shifflett was taken back to the hospital for another appointment with Dr. Roehm. In response to Shifflett's statement that he was in excruciating pain, that there was swelling in his face, and that his teeth felt misaligned, Dr. Roehm increased his dose of Motrin (ibuprofen).

6

On May 24, 2016, Shifflett saw Dr. Muhammad Golsorkhi, a medical doctor at SCI Graterford. He requested an increase in his pain medicine, which Dr. Golsorkhi refused because a higher dose of Motrin could cause long-term harm. Shifflett asked for a stronger pain medicine instead, but was refused. Dr. Golsorkhi suggested that Shifflett speak to "dental" about his concerns, and the following day he did just that, submitting a dental sick call request.

Dr. Ronald J. Burkholder, a contract dentist at SCI Graterford, saw Shifflett on May 26 and took an x-ray of his jaw. Dr. Burkholder opined that Shifflett's pain was the result of a incorrectly performed surgery and that Dr. Roehm should have inserted plates on both sides of Shifflett's jaw rather than two plates on the left side, and should have removed a wisdom tooth on the left side of his mouth before inserting the plates. Shifflett asked Dr. Burkholder for pain medication but was told that the issue was medical rather than dental in nature.

Later that same day, Shifflett submitted Grievance No. 628368 ("Grievance No. 3"). It recounted his meeting with Dr. Burkholder and noted that the medical and dental professionals at SCI Graterford had each disclaimed responsibility for his treatment, saying his problems were in the other's area of practice. Thus he requested to be seen by an external doctor but not at Temple University Hospital. He also reiterated his complaints of continued pain and sick call requests being ignored.

On May 27, 2016, the Corrections Health Care Administrator at SCI Graterford, Joseph C. Korszniak, issued the Initial Review Responses to Grievance Nos. 1 and 2. Korszniak stated that Shifflett was not being neglected, as he had been prescribed medication for his condition; that some delays in the delivery of medication were beyond the nursing staff's control; that "[p]ain is very difficult to treat since most

7

individual[s] perceive pain differently[, as s]ome have a very high tolerance and some have a low or no tolerance;" and that pain management was in the discretion of the health care providers. He did, however, state that he would schedule Shifflett to visit the pain management clinic.

Over the following days Shifflett submitted further sick call requests, one "medical" on May 29 and one "dental" on the 30th. Those requests complained of continuing severe pain as well as bleeding in his mouth, and sought increased pain medication and re-examination of his mouth. On May 30 Shifflett also submitted Grievance No. 628417 ("Grievance No. 4"), which reiterated many of his prior complaints and added a few new details, notably that Drs. Christian and Golsorkhi would not give him adequate pain medication because he was "in the hole" [*i.e.*, in solitary confinement] and therefore did not deserve proper treatment. That same day he was seen again by Dr. Christian, who refused to treat him. The next day a prison guard told Shifflett that he had a pass to see a dentist but was not taken to his appointment. On June 1, 2016, Grievance Nos. 3 and 4 were rejected as duplicative of Grievance No. 1. On June 2, 2016, Shifflett was again informed by a guard that he had a pass to see a dentist, and again he was not taken to the appointment.

On June 7, Shifflett filed a staff request complaining that the responses to Grievance Nos. 1 and 2 were overdue. Korszniak's responses to these grievances had been signed on May 27 and were marked "RECEIVED" on May 30, but it appears that Shifflett had not yet received a copy of either. The next day he submitted another dental request form, noting that he was developing an infection in his mouth, and he appealed the denial of Grievance Nos. 3 and No. 4, which he noted did not concern the same subject matter as Grievance No. 1. It does not appear that there was any response to these appeals.

On June 12, 2016, Shifflett filed appeals of the denial of Grievance Nos. 1 and No. 2. He also submitted a request for a peer review of his treatment and for a "dental hold," both under the terms of the prison's policies. In the following days he again submitted sick call requests to both dental and medical. On June 16, he was seen by Dr. Michael J. Bianco, a contract dentist at SCI Graterford, who placed Shifflett on a soft diet and prescribed penicillin to deal with his infection. Dr. Bianco reviewed Shifflett's x-ray from May 26, concluding that there were hairline fractures in Shifflett's jaw and that screws might have been drilled into his wisdom tooth. He also ordered a CT scan and arranged for Shifflett to see a Dr. Samee, an oral specialist from Temple University Hospital, on June 22, which never took place. (The complaint does not state Dr. Samee's full name.)

Shifflett was transferred to SCI Mahanoy on June 21. This transfer is what his request for a dental hold had been intended to prevent, as he had upcoming follow-up appointments at Temple University Hospital. On June 27, Shifflett had an appointment at Geisinger Hospital for a CT scan. Three days later, he was seen by a Dr. Kaz, evidently on the medical staff at SCI Mahanoy (we again do not have a full name), who ordered that he see an oral specialist in late July, renewed his order of Motrin, and prescribed amoxicillin. Shifflett was seen again by Dr. Kaz on July 7, when he renewed both of Shifflett's medications, stated that he believed Shifflett's initial surgery would need to be corrected, and stated that he would continue seeing Shifflett—and treating the infection in his mouth—until he could see a specialist. Shifflett had further appointments with Dr. Kaz on July 14 and 19, and was told he would see a specialist on July 28.

Meanwhile, on July 27 the Facility Manager at SCI Graterford, Cynthia Link, issued an appeal response as to Grievance Nos. 1 and No. 2. Link upheld the denial of the

9

grievances, noting that she was not qualified to dictate or overrule the decisions of trained medical professionals and recommending that Shifflett continue working with the medical staff to treat his symptoms. The responses acknowledged that they were late (under prison policy a response to Shifflett's appeal was due within 15 working days, *i.e.*, on July 1—almost a month before the actual response) but stated that this would not affect his appeal rights.

On July 28, Shifflett saw Dr. Joseph P. Mulligan, a dentist from Temple University Hospital. Dr. Mulligan declined to opine on Shifflett's various medical problems, stating that doing so would make him an expert witness in any future legal proceedings and that Shifflett could not afford him. Instead he renewed the Motrin order, prescribed clindamycin, and reiterated that Shifflett would need corrective surgery. The following day Shifflett met with the Corrections Health Care Administrator for SCI Mahanoy, John Steinhart, who told him that he was being transferred back to SCI Graterford for an appointment at Temple University Hospital. Shifflett replied that he did not want to go back to that hospital, but Steinhart stated that Temple would "have to correct its mistake." (In fact Shifflett was transferred to SCI Chester, not SCI Graterford.)

Shifflett was again seen by Dr. Roehm at Temple University Hospital on August 3. He argued with Dr. Roehm over her intent to take a CT scan, as she seemingly was unaware of his CT scan from June 27. Shifflett took issue with Dr. Roehm's assumption that the hardware in his mouth— which Dr. Roehm planned to remove—was the cause of his pain. She said she would schedule an appointment for a CT scan and perform the surgery thereafter. Shifflett was taken back to SCI Chester and continued to receive clindamycin.

Eventually, after another month of submitting numerous sick call requests and seeing various prison doctors, Shifflett

10

was taken back to Temple University Hospital for his surgery on September 6, 2016. One of the two plates in his mouth was removed, and he was told that the other had not been removed because the plate and screws were hitting his wisdom tooth, which was causing complications. His discharge from the hospital was somewhat rushed, such that he had trouble urinating upon his return to SCI Chester. Two days later he was released from the infirmary, but his face was "swollen as if he had a grapefruit in his mouth." He received no treatment for this swelling or for his continued pain.

Shifflett returned to Dr. Roehm on September 14, and was told he would see an oral specialist to remove his wisdom teeth. Shifflett saw Dr. Samee on September 27, and was informed that one wisdom tooth needed to be removed but that Dr. Samee could not perform the surgery yet due to the sorry state of Shifflett's jaw after his recent surgery.

That same day he finally received a copy of the responses to his grievance appeals for Nos. 1 and 2. On October 12—15 days after he received a copy of the appeal responses—Shifflett submitted a second set of appeals to the Chief Secretary of Inmate Grievance and Appeals. They were rejected on October 20 using a form that checked off two reasons for the rejection: the appeals were not submitted within 15 days after the decisions being appealed and Shifflett had not attached all of the required documentation to his appeals. He had several more appointments with various doctors throughout November 2016, but still did not receive the surgery to remove his wisdom teeth as of December 15, 2016.

Shifflett filed this complaint in the District Court for the Eastern District of Pennsylvania on December 19, 2016. He named Dr. Bianco, Dr. Burkholder, Dr. Christian, Dr. Golsorkhi, Korszniak, Dr. Roehm, and Dr. Mulligan as defendants and brought claims under 42 U.S.C. § 1983 for

11

violations of the Eighth Amendment (deliberate indifference to severe medical need) and First Amendment (retaliation for engaging in protected expression by filing complaints). Defendants Bianco, Burkholder, and Korszniak (referred to as the "Corrections Defendants") filed one motion to dismiss on March 8, 2017. Dr. Mulligan filed a separate motion to dismiss on March 21, followed by a motion from Dr. Roehm on March 22 and one from Dr. Golsorkhi on March 28. The Corrections Defendants filed certificates of concurrence as to the other defendants' motions to dismiss. (It does not appear that Christian was ever served, and he did not participate in the litigation.)

For the most part, these motions to dismiss asserted that Shifflett had not alleged any deliberate indifference to his severe medical needs adequate to create liability under the Eighth Amendment. Some made other contentions—for instance, the Corrections Defendants made some arguments specific to Korszniak, whose supervisory role placed him in a different position, and Dr. Mulligan argued that the complaint did not describe any First Amendment retaliation on his part. Only Dr. Golsorkhi's motion made any mention of administrative exhaustion. He alleged that Shifflett failed to exhaust his administrative remedies as required by the PLRA because his secondary appeals of Grievance Nos. 1 and 2 were not filed within 15 days after the Facility Manager's decision on July 27, 2016. Dr. Golsorkhi had also subpoenaed the entire case file for these grievances, which to him demonstrated that the appeals were rejected not only as untimely but because he failed to attach the full grievance record. Failure to comply with the grievance appeal procedures thus meant that Shifflett had not properly exhausted his administrative remedies.

The District Court granted all of the motions to dismiss, both because Shifflett failed to exhaust his administrative remedies and because he had not stated a valid merits claim.

12

*See Shifflett v. Korszniak*, 2017 WL 2986331 (E.D. Pa. 2017). The opinion noted that in their motions to dismiss "Moving Defendants argue several grounds for dismissal," including failure to exhaust, but it did not address that only one of the motions to dismiss had actually mentioned exhaustion. *Id*. at *5.

The Court's analysis began by noting that Shifflett's last appeal was dismissed as procedurally defective. Then, in a footnote, it considered and rejected his arguments why this should not foreclose his suit. As to Shifflett's point that the prison failed to follow its own policies when it did not decide his first appeals in a timely fashion, the Court observed that the response to those appeals stated that the delay would not affect his appellate rights. And although Shifflett noted that he filed his secondary appeals within 15 days of the date when he first received notice of the decision on the first appeals, the Court observed that the language of the prison policy required him to submit his final appeal within 15 days of the date of the decision itself, not from when he received a copy of it. The opinion concluded that "[Shifflett's] claims against Moving Defendants are barred for failure to exhaust all administrative remedies and, therefore, are dismissed." *Id*. at *6.

The Court went on to consider the merits of the defendants' Rule 12(b)(6) arguments. It held that Shifflett had alleged at most negligence or malpractice but not deliberate indifference as required under the Eighth Amendment, as "it is undisputed[] that medical decisions were made and treatment provided to [Shifflett], which necessarily indicates that Defendant Doctors did not consciously disregard a risk to [his] health." *Id*. at *7. As to the First Amendment claim, the Court observed that Shifflett had not alleged any personal involvement by any of the defendants in the decision to transfer him. It rejected his argument that Korszniak retaliated against him by failing to place a medical hold on the transfer, as

13

Shifflett had requested. *Id*. at \*9. Finally, the Court denied Shifflett leave to amend, noting that this would be futile because he had failed to exhaust his administrative remedies and was therefore barred from suit by the PLRA. *Id*. at \*10.

Shifflett filed a timely notice of appeal that mentioned five of the defendants but not Dr. Mulligan.[1]

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction per 28 U.S.C. § 1291.

We review anew the District Court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), as well as its interpretation of the PLRA's exhaustion requirement. *Spruill v. Gillis*, 372 F.3d 218, 226 (3d Cir. 2004). We review the decision to deny leave to amend for abuse of discretion. *Renchenski v. Williams*, 622 F.3d 315, 324–25 (3d Cir. 2010).

## III. Analysis

### A. Exhaustion

The principal issue before us is whether Shifflett exhausted his administrative remedies. The PLRA states that "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

---

[1] On appeal, Shifflett was represented *pro bono* by students in Yale Law School's Appellate Litigation Project, supervised by lawyers from Wiggin & Dana. We thank them for their able and zealous work representing Shifflett.

14

42 U.S.C. § 1997e(a). Exhaustion is considered separately for each claim brought by an inmate, and if a complaint includes both exhausted and unexhausted claims, courts will dismiss the latter but not the former. *See Jones v. Bock*, 549 U.S. 199, 219–20 (2007). The Supreme Court has held that the PLRA requires what is known as "proper exhaustion," meaning that inmates must comply with the rules and procedures of prison administrative systems. *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). We have held that these procedural requirements are drawn from the policies of the prison in question rather than from any free-standing federal law. *Spruill*, 372 F.3d at 231. Thus we look to the grievance policy at SCI Graterford to determine whether Shifflett has properly exhausted his remedies as required by the PLRA. *See Inmate Grievance System—DC-ADM 804*, Pa. Dep't. of Corr. (May 1, 2015) ("DC-ADM 804"), *available at* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf.

Of course, exhaustion applies only when administrative remedies are "available." Under certain circumstances, a nominally extant prison grievance policy is not truly an "available" remedy. *Ross v. Blake*, 136 S. Ct. 1850 (2016). This applies when the procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859–60.

15

Shifflett argues that his administrative appeals were rendered unavailable when the prison failed to respond in a timely manner to his first appeal of Grievance Nos. 1 and 2. For this claim he relies on *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148 (3d Cir. 2016). There, a prisoner submitted a grievance and received no response within the period prescribed by the grievance policy. *Id*. at 151. He filed an action in federal court roughly three months after a response was due from the prison, and only another six weeks thereafter received a response to his initial grievance. *Id*. at 152. We noted that "[f]ive of our sister courts have held that a prison's failure to timely respond to an inmate's properly filed grievance renders its remedies 'unavailable' under the PLRA," *id*. at 153, and quoted approvingly language from the Fifth Circuit stating that "[a] prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired." *Id*. (quoting *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (*per curiam*)). We then held that,

> [c]onsistent with *Small* [*v. Camden Co.*, 728 F.3d 265 (3d Cir. 2013)] and the unanimous view of the Courts of Appeals that have spoken on the matter, . . . SCI Rockview rendered its administrative remedies unavailable to [Robinson] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim.

*Id*. at 154.

Dr. Golsorkhi seeks to distinguish *Robinson*, arguing that it concerned extreme facts not present in this case. It is true that our holding there, strictly viewed, rested in part on those facts, and therefore *Robinson* itself did not establish a

16

bright-line rule. Its discussion of the relevant legal principles left little doubt, however, that our Court considers such a rule appropriate. The PLRA requires that prisoners comply with the procedural demands of a system created by their jailors. No less must prisons comply with the demands of the system they created. Hence we hold that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement.

Applying this rule to Shifflett's case, and taking the allegations in his complaint as true, it is clear that he exhausted his remedies as to the matters addressed in Grievance Nos. 1 and 2 on July 1, 2016. The prison grievance policy requires the Facility Manager to respond to appeals within 15 working days after they are filed (here, July 1). *See* DC-ADM 804, § 2.A.2.d(1) ("The Facility Manager/designee shall notify the inmate . . . of his/her decision within 15 working days of receiving the appeal."). Shifflett filed his appeals on June 12, and received no response within the specified time limit. At that moment he obtained the right to come into federal court. We need not consider the contention, urged by Dr. Golsorkhi and adopted by the District Court, that Shifflett was required under the policy to file his secondary appeal prior to the moment when he actually received a copy of the Facility Manager's decision on his first appeal. Nor does it matter whether Shifflett failed to attach the proper documents to his secondary appeal. His decision to continue working through the prison's internal system in good faith did not waive or negate his successful exhaustion of remedies as required by the PLRA.[2]

_____

[2] Although the District Court did not mention Grievance Nos. 3 and 4 in its opinion, it appears from the record before us that

17

This does not apply, however, to Shifflett's First Amendment retaliation claim, which was not the subject of any grievance he submitted. Retaliation is a separate claim, *see White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990), and therefore must be separately grieved. And although in rare cases prisoners will not be required to file a grievance for a retaliation claim if they fear further retaliation, *see Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018), that is not the case here. Shifflett does not specifically allege that he feared further retaliation, and the extreme facts of *Rinaldi*—overt threats of violent retribution—are not present here. Moreover, Shifflett continued to litigate his various disputes with the prison system after the transfer he claims was retaliatory. This weighs heavily against the notion that the fear of further reprisal deterred him from submitting a grievance for his retaliation claim. Thus, although we reverse the District Court's dismissal of Shifflett's Eighth Amendment claims as unexhausted, we affirm the dismissal with prejudice of his First Amendment claim.

## B. Leave to Amend

Because we conclude the District Court should not have dismissed Shifflett's Eighth Amendment claims for failure to exhaust, we vacate as well its refusal to allow leave to amend as to those claims. As noted, the only stated basis for that refusal was the impossibility of curing the exhaustion defect through re-pleading. On appeal the Corrections Defendants, as well as Dr. Roehm, argue that amendment would be futile for substantive reasons. They suggest that the allegations in Shifflett's complaint make clear that no constitutional violations occurred. Thus, even if we were to reverse the

the prison never responded to Shifflett's initial appeals of these grievances. Both of these grievances should be addressed by the District Court on remand.

18

District Court on exhaustion, they would ask us to review the substance of Shifflett's allegations and, finding them lacking, affirm the dismissal with prejudice.

This is not convincing. Federal Rule of Civil Procedure 15(a)(2) states that the Court "should freely give leave [to amend] when justice so requires." This certainly includes amendment to cure defective allegations. *See* 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1474 (3d ed. 2019) ("A . . . common use of Rule 15(a) amendments is to correct insufficiently stated claims or defenses. Typically, amendments of this character involve either adding a necessary allegation in order to state a claim for relief or correcting a misnomer of a party to the action."). Thus even if defendants are correct that the facts alleged in the initial complaint do not describe any Eighth Amendment violations, Shifflett is free to add by amendment new allegations or to alter some of his existing allegations.

### C. Remand

Having vacated the dismissal with prejudice of Shifflett's Eighth Amendment claims, we remand to the District Court to allow Shifflett to file an amended complaint and to appoint counsel for him. Under *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993), counsel should be appointed where an indigent plaintiff with a potentially meritorious claim is not fully able to prosecute his or her own case in light of the overall complexity of the case. *See id*. at 155–56. Of particular note, this case involves numerous different defendants, each subject to different allegations, and may well require medical expert testimony to establish deliberate indifference at trial. *See id*. at 156 (noting the complexity of legal issues and the need for expert testimony as two key factors favoring appointment of counsel).

Though we do not rule on the merits of the existing complaint, we do offer comment on the legal standards we believe relevant on remand. First, administrative exhaustion is not a pleading requirement but rather an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Moreover, it appears that the PLRA's exhaustion requirement would not apply to any amended complaint Shifflett might file at this point because he is no longer incarcerated. *See Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) (the PLRA's exhaustion requirement does not apply to suits brought by former prisoners concerning their conditions of confinement while incarcerated); *see also id.* at 210 n.10 (citing *Harris v. Garner*, 216 F.3d 970, 979–80 (11th Cir. 2000) (*en banc*) (suggesting that, where a prisoner's suit is brought during his incarceration but he is subsequently released, any dismissal for failure to exhaust should be without prejudice to refiling)).

Second, that some treatment has been provided does not automatically defeat an Eighth Amendment deliberate-indifference claim. The failure to provide adequate treatment can also amount to deliberate indifference. *See Rouse v. Plantier*, 182 F.3d 192, 197–98 (3d Cir. 1999) (prison officials act with deliberate indifference when they, among other things, "persist[] in a particular course of treatment in the face of resultant pain and risk of permanent injury") (internal quotation marks omitted).

This is not to say that Shifflett's deliberate indifference claims are adequate as they stand. Nor do we prejudge whether on remand the eventual amended complaint will adequately state a valid claim or claims. That determination will be made in the first instance by the District Court. We seek only to clarify principles that relate to that endeavor.

20

## IV. Conclusion

What is good for the goose is good for the gander. The PLRA requires strict compliance by prisoners seeking redress of their grievances, and by the same token we hold that it requires strict compliance by prison officials with their own policies. Whenever a prison fails to abide by those procedural rules, its administrative remedies have become unavailable, and inmates are deemed to have successfully exhausted their remedies for purposes of the PLRA. In this case, according to the complaint, Shifflett met that standard when the Facility Manager at SCI Graterford did not respond to his first appeals within the specified 15 days. Thus we affirm in part (as to Shifflett's First Amendment claims) and reverse in part (as to his Eighth Amendment claims), and remand for the District Court to allow Shifflett to file an amended complaint and to appoint counsel for him under *Tabron*.[3]

---

[3] Relying on Federal Rule of Appellate Procedure 3, Dr. Mulligan argues that we lack appellate jurisdiction over him because Shifflett's notice of appeal failed to name him and failed to "refer specifically to the Order on [Dr. Mulligan's] Motion to Dismiss as being one of the orders that [Shifflett] is appealing." Mulligan Br. 17. We disagree. Federal Rule of Appellate Procedure 3 does not require that appellees be named in the notice of appeal; the rule only requires that the notice of appeal name the appellants. Fed. R. App. P. 3(c)(1)(A) ("The notice of appeal must . . .specify the party or parties taking the appeal . . . ."). Regarding the order identified in the notice of appeal, the District Court issued only one order granting all of the motions to dismiss. As such, by identifying that single order, we conclude that Shifflett complied with the requirement of Federal Rule of Appellate Procedure 3(c)(1)(B)

to "designate the judgment, order, or part thereof being appealed" in the notice of appeal.