**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3056
_____

VANESSA L. NAISHA,
                                        Appellant

v.

DANA METZGER, Warden of James T. Vaughn Correctional Center;
KESHAW TRAVIES, Lieutenant at James T. Vaughn Correctional Center;
ARABIA, Correctional Officer at James T. Vaughn Correctional Center,
Individuals and in their Official Capacities

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-18-cv-00738)
District Judge:  Honorable Richard G. Andrews

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 1, 2021

Before:  GREENAWAY, Jr., KRAUSE, and BIBAS, Circuit Judges

(Opinion filed: December 1, 2021)

_____

PER CURIAM

Vanessa L. Naisha appeals the District Court's order granting Appellees' motion for summary judgment. For the reasons below, we will affirm in part and vacate in part the District Court's judgment and remand this matter to the District Court for further proceedings.

The procedural history of this case and the details of Naisha's claims are well known to the parties, set forth in the District Court's memorandum opinion, and need not be discussed at length. Briefly, Naisha, a transgender female inmate, alleged in Naisha's complaint that Naisha was taken out of Naisha's cell while it was being searched. Naisha was placed in a shower area and told to strip for a visual search. Naisha requested that a female correctional officer perform the visual strip search because Naisha had been taking hormones and had developed breasts. Appellee Correctional Officer Arabia spoke with Appellee Lt. Travies about Naisha's request and then informed Naisha that if Naisha did not comply with the strip search, Naisha would be taken to disciplinary segregation. Naisha then consented to the search. Naisha alleges that Officer Arabia looked Naisha's body over, laughed, and walked away. Naisha was later given disciplinary charges for possessing contraband and disorderly and threatening behavior. Naisha was found guilty of the charges.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

The next day, Naisha filed a complaint pursuant to the Prison Rape Elimination Act (PREA) by calling the PREA hotline. Months later, after Naisha filed Naisha's complaint in the District Court, Naisha received notification that the PREA investigation determined that Naisha's allegation of sexual assault was unfounded.

In Naisha's pro se civil rights complaint filed in the District Court, Naisha claimed that the Appellees' actions constituted sexual assault, sexual harassment, and deliberate indifference to Naisha's gender dysphoria in violation of the Eighth Amendment. Naisha alleged that Naisha's rights to due process were violated when the hearing officer found Naisha guilty of the disciplinary charges.[1] Naisha requested damages and injunctive relief. Naisha sought changes to the Delaware correctional policy that provides that transgender inmates are to be visually strip-searched by correctional officers of the same "biological sex." Procedure for Department of Correction, Delaware Bureau of Prisons, Chapter 8, Procedure No. 8.60A § V. E.4 (October 19, 2016). After discovery, Appellees moved for summary judgment, arguing, inter alia, that Naisha had failed to exhaust Naisha's administrative remedies before filing Naisha's complaint and that they were entitled to qualified

---

[1] The District Court dismissed Naisha's due process claims as legally frivolous before service of the Complaint. Naisha does not challenge the dismissal of these claims on appeal, so Naisha has forfeited the issue. N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp., 974 F.3d 486, 492 n.2 (3d Cir. 2020). In any event, we agree that the allegations failed to state a claim because the sanction of a thirty-day loss of privileges did not implicate a protected liberty interest. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that liberty interests requiring procedural due process are limited to freedom from restraints that impose "atypical and significant hardship" as compared to ordinary prison life).

immunity. The District Court agreed and granted Appellees' motion. Naisha filed a timely notice of appeal.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise de novo review over the District Court's grant of summary judgment on the grounds of failure to exhaust and qualified immunity. Peroza-Benitez v. Smith, 994 F.3d 157, 164 (3d Cir. 2021) (qualified immunity); Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 153 (3d Cir. 2016) (failure to exhaust). A grant of summary judgment will be affirmed if our review reveals that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As discussed below, there is no genuine dispute as to any material fact. With respect to Naisha's claim for injunctive relief, however, Appellees are not entitled to judgment as a matter of law.

We agree with the District Court that the Appellees were entitled to qualified immunity on Naisha's claims for damages.[2] Qualified immunity protects a government official from liability for civil damages as long as his conduct did not violate clearly established rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity applies unless: (1) the facts alleged by the plaintiff show the violation of a constitutional right; and (2) the law was clearly established at the time of the violation. See Pearson v. Callahan, 555 U.S. 223, 232 (2009). Here, the law at issue was not clearly established at the time of the visual strip search at issue in 2018. Naisha points

---

[2] Naisha argues that summary judgment was inappropriate because Naisha was not permitted to depose the Appellees and could not develop material facts. However, Naisha does not describe what material facts Naisha would have been able to develop that would have undermined the grant of summary judgment on the grounds of qualified immunity.

4

to no caselaw, and we have found none, establishing before February 2018 that a biologically male transgender inmate has a right not to be visually strip-searched by a male officer. Cf. Shaw v. D.C., 944 F. Supp. 2d 43, 55 (D.D.C. 2013) (holding that defendants were not entitled to qualified immunity for claims arising from searches involving physically intimate contact performed by male officers brought by transgender female arrestee who had undergone reassignment surgery and whom officers knew was legally female).[3]

Naisha's request for prospective injunctive relief, however, i.e., a change to the policy for strip searches of transgender inmates, is not barred by qualified immunity. See Hill v. Borough of Kutztown, 455 F.3d 225, 244 (3d Cir. 2006) (noting that defense of qualified immunity is available only for damages claims). Thus, we must consider whether we may affirm the District Court's grant of summary judgment with respect to Naisha's claim for injunctive relief on its alternate ground: that Naisha failed to exhaust Naisha's administrative remedies. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted."). Failure

---

[3] Naisha also claimed that Arabia and Travies were deliberately indifferent to Naisha's gender dysphoria, but Naisha did not allege that any member of the medical staff ever advised them that Naisha's condition required that Naisha should not be strip searched by male officers. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official … will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.") Naisha's allegation that the visual search constituted sexual assault and sexual harassment does not state a claim for relief. See Ricks v. Shover, 891 F.3d 468, 475 (3d Cir. 2018) (explaining that, in order for a single incident of sexual abuse to constitute a constitutional violation, "the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind"). Regardless of whether Appellees are entitled to qualified immunity, these allegations do not state a claim.

to exhaust is an affirmative defense for the defendants to plead and prove. Jones v. Bock, 549 U.S. 199, 216 (2007).

On appeal, Naisha argues that once Naisha's grievance, discussed below, was rejected as not appropriate for the prison grievance process, there was nothing further Naisha could do. Based on the caselaw of exhaustion and the Delaware PREA policy, Naisha is correct: once Naisha made Naisha's complaint and it was transferred from the grievance process to the PREA process, there was nothing further for Naisha to do except await the results of the investigation. Thus, Appellees were not entitled to judgment as a matter of law on the issue of exhaustion.

As noted by the District Court, Naisha did not challenge the search policy in Naisha's written grievances filed concerning the incident. Rather, Naisha complained that the officer was disrespectful and asked that Naisha's sneakers and other property taken during a cell search be returned. Naisha did, however, make an oral complaint regarding the search via the Prison Rape Elimination Act (PREA) hotline.[4] In response to Appellees' motion for summary judgment, Naisha submitted a notification from a prison official that informed Naisha that the grievance submitted on February 8, 2018, the day after the search, was outside the purview of the grievance policy and would be forwarded to the PREA office

---

[4] Naisha's therapist also notified prison officials of Naisha's complaints about the strip search.

6

for investigation.[5] This undated letter appears to be in response to Naisha's oral PREA complaint, as neither Naisha nor the Appellees have submitted any written grievance addressing this issue that was forwarded to the PREA office. Thus, the prison routed Naisha's challenge to the strip search policy to the PREA complaint process.

When Lt. Payson interviewed Naisha about this PREA complaint, Naisha told him that Naisha requested that a female officer conduct the search as Naisha identifies as transgender and had breast tissue as a result of hormone therapy. After being given a direct order to strip, Naisha removed Naisha's bra and panties, and the officer conducted the search. The lieutenant stated that he was closing the incident as unfounded because Naisha was only concerned with being strip searched by a male officer. He then cited the correctional policy that provides that cross-gender strip searches shall not be conducted except in exigent circumstances. Thus, Naisha challenged the search policy in the PREA complaint process, and prison officials recognized that Naisha was challenging the fact that Naisha was searched by male officers.

In the District Court, Appellees argued that Naisha did not exhaust Naisha's remedies through the PREA complaint process because Naisha filed Naisha's complaint in the District Court before the PREA investigation was concluded. See Porter v. Nussle, 534 U.S. 516, 524 (2002) (holding that state prisoner must exhaust administrative remedies before filing a complaint). We look to the prison's procedures to determine the steps required to

---

[5] In one of several incident reports addressing the February 7, 2018 incident, the author indicated that Naisha had claimed that the search was not done in compliance with PREA standards. A comment in the report states "PREA investigation sent to Lt. Payson." App'x to Summ. J. Br. at 336-338, ECF #79. This was the lieutenant who interviewed Naisha.

exhaust a claim. Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007). The Delaware PREA policy Appellees cited provides, in relevant part, that investigations should be conducted "promptly and thoroughly," and the facility should inform the victim in writing whether the allegation is determined to be substantiated, unsubstantiated, or unfounded. Procedure for Department of Correction, Delaware Bureau of Prisons, Chapter 8, Procedure No. 8.60 § VI. G.1 & G.4 (October 30, 2015). While the Appellees described a process with many layers of review, the investigation section of the policy does not. It simply provides for a complaint and an investigation.

In a later section entitled "Data Collection and Review," the policy provides that a Critical Incident Review (CIR) shall be conducted at the conclusion of every PREA investigation within 30 days. The policy states that the Bureau Chief will have final review of the CIR report, but no timeline is given for that review. Id. at § J.2. This review is not initiated by the inmate and occurs regardless of whether the inmate agrees with the outcome of the investigation. The review is not concerned with whether the outcome of the investigation was correct but rather whether (1) a change in policy or practice is needed to prevent sexual abuse; (2) the incident was motivated by discriminatory intent or other group dynamics; or (3) additional staffing or technology is needed. Id. at J.4.

The strip search at issue here was performed on February 7, 2018, and Naisha made Naisha's PREA complaint the next day. The lieutenant performed his investigation, which involved interviewing Naisha and the three correctional officers involved in the search. On March 1, 2018, the lieutenant issued a report finding the allegation unfounded. His report was then submitted to the Critical Incident Review (CIR) Board which met on June 21,

8

2018, more than 30 days later. The warden approved the outcome in August 2018, and the PREA coordinator and Bureau Chief gave their approval in November 2018, nine months after the search at issue. Meanwhile, Naisha had already filed Naisha's complaint on May 16, 2018.[6] The parties do not dispute the timeline of the processing of Naisha's PREA complaint. Instead, they dispute whether Naisha's PREA complaint was exhausted at the time Naisha filed Naisha's federal complaint.

We need not decide the exact requirements of the PREA exhaustion process here because Naisha exhausted Naisha's administrative remedies before filing Naisha's complaint regardless of how the procedure is viewed. To the extent that a PREA complaint is exhausted once the investigation is complete, Naisha's claim for injunctive relief was exhausted on March 1, 2018, once the lieutenant issued his decision after the investigation. Even if the CIR review is considered part of the PREA exhaustion process, this remedy was unavailable, and the claim exhausted, once the prison failed to complete the review within 30 days of the conclusion of the investigation. See Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019) (holding that "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement").

---

[6] According to Naisha's testimony at Naisha's deposition, Naisha was not informed of the progress of the investigation and the review process. Naisha stated Naisha heard nothing back after being interviewed until a few months before Naisha's deposition in October 2019. The letter informing Naisha of the results of the investigation is undated.

Here, the policy provides that after the PREA investigation is "promptly and thoroughly" conducted, a CIR is conducted within 30 days. Thus, an inmate reading that policy would not expect to wait nine months for an answer to his complaint. The investigation was completed on March 1, 2018, but the CIR Board review was not finished within 30 days. Rather, the review was not completed, and perhaps not even initiated, until after Naisha filed Naisha's complaint. Naisha waited over 90 days after filing Naisha's PREA complaint before filing Naisha's complaint in the District Court.[7]

Because Naisha exhausted Naisha's claim through the PREA process before Naisha filed Naisha's federal complaint, Appellees were not entitled to summary judgment on Naisha's claim for injunctive relief. Accordingly, we will vacate the District Court's grant of summary judgment on Naisha's claim for injunctive relief and remand for further proceedings.

Naisha also argues that the District Court erred by denying Naisha's motions for counsel. The District Court denied those motions because Naisha never applied for in forma pauperis status or asserted that Naisha was financially unable to afford counsel. Thus, Naisha did not qualify for counsel pursuant to 28 U.S.C. § 1915(e)(1) which provides that a "court may request an attorney to represent any person unable to afford counsel." Naisha may refile Naisha's motion for counsel on remand but must also file an accompanying

---

[7] In a section entitled "Exhaustion of administrative remedies," the federal PREA standards, on which the Delaware policies are based, require that an agency issue a final decision on a grievance alleging sexual abuse within 90 days of its filing and allow the prisoner to consider a lack of timely response as a denial. 28 C.F.R. § 115.52(d)(1) & (4). Here, Naisha filed Naisha's federal complaint 97 days after the PREA complaint was made.

10

application to proceed in forma pauperis for the purposes of counsel, explaining why Naisha cannot afford counsel. Given Naisha's sixth-grade education and severe mental illness, we are confident that the District Court will give any renewed counsel motion serious consideration. See Tabron v. Grace, 6 F.3d 147, 155-56 (3d Cir. 1993) (describing factors to be considered in deciding whether to appoint counsel).

It appears that Naisha is likely to be subject to visual strip searches by male officers in the future. See Procedure for Department of Correction, Delaware Bureau of Prisons, Chapter 8, Procedure No. 8.32 § VI. A.3 (listing circumstances when inmates will be subject to strip searches). The District Court, however, may wish to address on remand whether Naisha remains subject to visual strip searches by male officers to ensure that there is an existing case or controversy. See City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (holding that party seeking injunctive relief must show he is in a real, and not hypothetical, danger of an injury from the challenged conduct); Parkell v. Danberg, 833 F.3d 313, 332-34 (3d Cir. 2016) (remanding for consideration of whether the Fourth Amendment violation was "capable of repetition yet evading review," i.e., whether there was a reasonable chance that the prisoner would be again subject to strip search policy).

In connection with that analysis, the District Court may also wish to revisit its decision denying Naisha's motion to amend Naisha's complaint in which Naisha describes additional visual strip searches. The District Court may wish to treat the motion to amend as a motion to supplement. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (noting that pro se pleadings are held to less stringent standards); Lewis v. Att'y Gen., 878 F.2d 714, 722 n.20 (3d Cir. 1989) ("A pleading will be judged by its substance rather than

11

according to its form or label.") (citation omitted); cf. Adams v. Gould Inc., 739 F.2d 858, 864 (3d Cir. 1984) ("This liberal amendment philosophy limits the district court's discretion to deny leave to amend. The district court may deny leave to amend only if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party.").

For the above reasons, we will vacate the District Court's judgment in part with respect to Naisha's claim for injunctive relief and remand the matter to the District Court for further proceedings. We will affirm the District Court's judgment with respect to Naisha's claims for damages. The Clerk is directed to send Naisha an application to proceed in forma pauperis with Naisha's copy of the opinion in case Naisha wishes to refile Naisha's motion for the appointment of counsel in the District Court.