**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1610
_____

MOHAMMAD SOHAIL SALEEM,
Appellant

v.

CORRECTIONS OFFICER BRUNGART; SGT. GLASS, C/A Housing Unity
Supervisor; T. PILOSI, Hearing Examiner; G. MCMAHON, Deputy Superintendent;
MORRIS HOUSER, Deputy Superintendent; MARK A. GARMAN; T. MILLER,
Program Manager; JOSEPH DUPONT, Chief Hearing Examiner's Office; JOHN DOE
NUMBER ONE, Corrections Officer; JOHN DOE NUMBER TWO, Corrections Officer;
JOHN DOE LIEUTENANT, Corrections Supervisor; JOHN DOE RHU LIUTENANT,
Corrections Supervisor
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-19-cv-00025)
District Judge: Honorable Robert D. Mariani
_____

Argued
September 20, 2022

Before: AMBRO, RESTREPO, and FUENTES, *Circuit Judges*

(Filed: November 30, 2022)

Johanna Dennehy [ARGUED]
Jessica Rothschild
Laurie Edelstein
Steven Reed

Steptoe & Johnson LLP<sup>*</sup>
1330 Connecticut Avenue, N.W.
Washington, DC 20036
        *Counsel for Appellant Mohammad Sohail Saleem*

Sean A. Kirkpatrick [ARGUED]
Lindsey A. Bedell
Office of Attorney General of Pennsylvania
Strawberry Square
15th Floor
Harrisburg, PA 17120
        *Counsel for Appellees*

_____

OPINION[**]

_____

FUENTES, *Circuit Judge*.

Plaintiff-Appellant Mohammad Sohail Saleem, a former Pennsylvania state prisoner, filed a civil rights action pursuant to 42 U.S.C. § 1983 against various prison officials in the United States District Court for the Middle District of Pennsylvania. The District Court granted Defendants-Appellees' motions to dismiss and for summary judgment and dismissed Saleem's claims. Saleem appeals the District Court ruling, arguing that the court erred in (1) finding that he did not exhaust his administrative remedies before bringing suit, as required by the Prison Litigation Reform Act ("PLRA"); and (2) determining that he failed to state a procedural due process claim because he was

[*] We note that the attorneys representing Appellant appeared pro bono. We thank them for taking these cases on a pro bono basis and for the very able and professional way in which they handled the representation and argument before the Court.
[**] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

2

not deprived of a liberty interest when placed in 30-day disciplinary confinement. We agree with the District Court, and we therefore affirm the dismissal of Saleem's complaint.

## I.     BACKGROUND

In June 2017, Defendant-Appellee Officer Brungart filed a misconduct report against Saleem. When Saleem responded to the misconduct report, the sole allegation he raised was that Brungart had falsified the report. A hearing was held, after which the Hearing Examiner, Defendant-Appellee T. Pilosi, determined that the evidence presented supported Brungart's version of events. During the administrative appeals process, Saleem filed a grievance pursuant to DC-ADM 804[1] against Brungart, making the same allegation that he had falsified the misconduct report. The DC-ADM 804 grievance was denied, and Saleem fully appealed the misconduct report through the DC-ADM 801[2] process.

In January 2019, Saleem filed the present civil rights suit asserting: (1) Eighth Amendment deliberate indifference claims against Brungart and his housing supervisor (Sergeant Glass); (2) Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc *et seq.* ("RLUIPA") and First Amendment claims against Brungart, Glass, and Pilosi; (3) Fourteenth Amendment Equal Protection claims against Brungart, Glass, and Pilosi; and (4) Fourteenth Amendment Due Process claims against Brungart, Pilosi, and the officers involved in the appeals process, McMahon, Miller, Houser, Garman, and

---

[1] DC-ADM 804 is one of the prison's three inmate grievance procedures meant for grievances concerning conditions of confinement.
[2] The DC-ADM 801 grievance process is oriented toward concerns relating to a misconduct or resulting proceedings.

Dupont. The defendants filed a motion to dismiss and for summary judgment on the issue of administrative exhaustion.

The District Court granted summary judgment to Garman, McMahon, Houser, Glass, Miller, Pilosi, and Dupont for failure to exhaust administrative remedies as to these individuals. It concluded that the only claim Saleem had exhausted was the procedural due process claim against Brungart (for lying in statements written in the misconduct) but dismissed that claim as well, concluding that Saleem had no protected liberty interest in 30 days of disciplinary custody. This appeal followed.

## II. JURISDICTION

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and this Court has jurisdiction under 28 U.S.C. § 1291. We review *de novo* the District Court's determination that Saleem failed to exhaust administrative remedies.[3] "In doing so, we accept the Court's factual findings unless clearly erroneous."[4] We also review *de novo* the District Court's grant of the motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[5] We "are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant."[6]

---

[3] *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).
[4] *Robinson*, 831 F.3d at 153 (citing *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013)).
[5] *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).
[6] *Id.* (citations omitted).

## III.    DISCUSSION

The questions on appeal are whether the District Court erred in (1) granting summary judgment on Saleem's claims for failure to exhaust administrative remedies, and (2) dismissing Saleem's due process claims for failure to state a claim.  We find that the District Court did not err because Saleem failed to exhaust available administrative remedies and he was not deprived of any state-created liberty interest.

### A.

Under the PLRA, a prisoner must "exhaust . . . administrative remedies" before bringing suit in court for grievances related to their incarceration.[7]  Exhaustion entails "complet[ing] the administrative review process in accordance with the applicable procedural rules," which are provided by the individual prisons.[8]  However, "exhaustion applies only when administrative remedies are 'available,' and "[u]nder certain circumstances, a nominally extant prison grievance policy is not truly an 'available' remedy."[9]  Whether a remedy is truly "available" is a functional inquiry based on "real-world workings of prison grievance systems."[10]  A remedy may be found to be "unavailable" if, among other things, the procedure results in officers being "unable or consistently unwilling to provide any relief to aggrieved inmates."[11]

---

[7] 42 U.S.C. § 1997e(a).
[8] *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing, *inter alia*, *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004).
[9] *Shifflet v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019).
[10] *Ross v. Blake*, 578 U.S. 632, 643 (2016).
[11] *Id.*

Saleem argues that he exhausted his administrative remedies by putting prison officials on notice of his claims, and that there was no available route by which to make a grievance related to the misconduct charge. Both arguments are unpersuasive under the circumstances presented.

The prison's procedural rules dictated that inmate misconduct, and the resultant proceedings, are addressed through a DC-ADM 801 disciplinary process. Grievances related to placement in administrative custody could be addressed through DC-ADM 802, and all other grievances not arising from misconduct or custody procedures could be addressed through DC-ADM 804. In the misconduct proceedings pursuant to DC-ADM 801, Saleem only alleged that Brungart lied about seeing him fighting with another inmate. Saleem did not allege, until his second administrative appeal, that there was surveillance footage that should be viewed, and he did not accuse the Hearing Examiner or Program Review Committee of failing to view the footage.[12] He also did not raise any allegation regarding religious retaliation, and only vaguely accused the hearing officers of "bias" in his second appeal. Proper exhaustion of administrative remedies means not only "using all steps that the agency holds out" but also "doing so *properly*," so that the agency has a

---

[12] This Court has previously held that an inmate's due process rights are violated when a hearing officer refuses to review surveillance video of the alleged incident, and instead simply relies on a correction officer's story. *See Burns v. Penn. Dep't of Corrections*, 642 F.3d 163 (3d Cir. 2011). Here, however, Saleem failed to exhaust his administrative remedies on this issue and, in any event, as discussed further below, has not stated a liberty interest implicated by the hearing.

chance to address the relevant arguments on the merits.[13]  Thus, Saleem failed to exhaust his administrative remedies for most of his claims.

With respect to Saleem's accusation that there was no grievance procedure available for his claims, Saleem had different avenues to make his complaints, and points to no evidence of a blanket policy of denying DC-ADM 804 grievances relating in any way to misconduct.  Indeed, his written rejection allowed him to appeal that determination, which he did not do, and directed him to raise his challenges related to the misconduct via DC-ADM 801.  Moreover, Saleem's DC-ADM 804 grievance focused again on the alleged falsity of the misconduct charge against him—not on any other conduct.  In sum, there is no evidence that the procedures available to Saleem "operate[d] as a simple dead end."[14]  Because there were no material issues of fact regarding the availability of administrative remedies, we will affirm the District Court's grant of summary judgment.

## B.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."[15]  "In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."[16]  "Under certain circumstances, states may create liberty interests with

---

[13] *Woodford*, 548 U.S. at 90 (internal quotation marks and citation omitted).
[14] *Ross*, 578 U.S. at 643.
[15] U.S. Const. amend. XIV.
[16] *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citation omitted).

respect to inmates' rights that are protected by the Clause."[17]  Prison disciplinary action

does not typically implicate a liberty interest requiring due process safeguards unless the

punishment "imposes atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life."[18]

The parties acknowledge that 30 days of disciplinary confinement, on its own, does

not implicate a liberty interest.[19]  Saleem argues, however, that the 30 days of confinement

deprived him of his ability to attend mandatory programming, which affected his ability to

seek parole and resulted in his sentence being extended "several years."[20]  Saleem contends

that *Wolff v. McDonnell*, 418 U.S. 539 (1974), and this Court's decision in *Leamer v.*

*Fauver*, 288 F.3d 532 (3d Cir. 2002), govern and require reversal.  Saleem's contention

fails because this case is distinguishable from *Leamer*, and there is no state-created right to

be released on parole in Pennsylvania.[21]

In *Leamer*, we held that New Jersey created a cognizable liberty interest in treatment

for incarcerated sexual offenders.[22]  As the Court explained, "[t]he structure of the statutory

scheme established by New Jersey to ensure treatment for sex offenders" was "somewhat

unique."[23]  The statutory scheme there predicated the term of the plaintiff's sentence on his

---

[17] *Fantone v. Latini*, 780 F.3d 184, 190 (3d Cir. 2015).
[18] *Sandin v. Conner*, 515 U.S. 472, 484 (1995).
[19] *See, e.g.*, *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (confinement in administrative custody for fifteen months not atypical or significant deprivation sufficient for a liberty interest).
[20] Saleem does not further describe how his inability to attend programming for 30 days extended his sentence by "several years."
[21] *Weaver v. Penn. Bd. of Probation and Parole*, 688 A.2d 766, 770 (Pa. Cmwlth. 1997).
[22] *Leamer*, 288 F.3d at 545.
[23] *Id.* at 538.

response to treatment. Good behavior, parole policies, or other credits could not affect the term of the plaintiff's sentence, only successful therapy. Saleem argues that the statutory scheme in Pennsylvania creates a similar situation in which he was required to complete sex offender treatment before being released to parole, and his 30-day confinement caused him to fail to complete that programing, thereby extending his sentence.

> The relevant statute here, 61 Pa. Con. Stat. Ann. § 6137(a)(3.1), states:

> (i) Following the expiration of the offender's minimum term of imprisonment, if the primary reason for not paroling the offender is the offender's inability to access and complete prescribed programming within the correctional institution, the board may release the offender on parole with the condition that the offender complete the prescribed programming while on parole.

> (ii) This paragraph shall not apply to offenders who are currently serving a term of imprisonment for a crime of violence as defined in 42 Pa.C.S. § 9714 (relating to sentences for second and subsequent offenses) or for a crime requiring registration under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).

> (iii) For those offenders to whom subparagraph (ii) is applicable, the board may release the offender on parole if the offender is subject to another jurisdiction's detainer, warrant or equivalent writ.

By its plain language, the statutory scheme applies only where the "primary reason" for denying parole is the offender's failure to complete programming.[24] The parole board did not cite a failure to complete programming as the "primary reason" it denied Saleem parole. Rather, failure to complete programming was only one of several reasons underlying that decision.

---

[24] 61 Pa. Con. Stat. Ann. § 6137(a)(3.1)(i).

Moreover, even if subparagraph ii of 61 Pa. Con. Stat. Ann. § 6137(a)(3.1) applies to Saleem, there was no state-created liberty interest of which Saleem was deprived. First, under Pennsylvania law, there is no right to parole unless and until the inmate is actually released on parole.[25] Second, 42 Pa. Con. Stat. Ann. § 9718.1(d), relating to sex offenders required to participate in treatment, states that "this section shall not be construed to confer any legal right upon any individual, including an individual . . . seeking to . . . be paroled." As this Court has previously held, "[w]here state law provides parole authorities complete discretion to rescind a grant of parole prior to release, an inmate does not have a constitutionally protected liberty interest in being paroled."[26]

For this reason, Saleem's reliance on *Wolff v. McDonnell* is misplaced. There, the Supreme Court found a protected liberty interest in a state-created statutory right to good time credit that could only be rescinded as a sanction for "major misconduct."[27] Here, by contrast, the state system allows parole to be rescinded at the discretion of the parole board. Thus, Saleem failed to state a claim upon which relief could be granted on any unexhausted claim because the state created no liberty interest in release to parole.

IV.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's order dismissing Saleem's complaint.

---

[25] *Weaver*, 688 A.2d at 770.
[26] *Fantone*, 780 F.3d at 190.
[27] *Wolff*, 418 U.S. at 557.